the value of the mortgaged premises at the time of the foreclosure.

W. Sullivan, for defendant, admitted that the only question in the cause was, whether the plaintiff was entitled by law to recover such balance.

F. C. Gray, for plaintiff, stated, that the point had been repeatedly decided in favour of the right of the plaintiff.

STORY, Circuit Justice. This question has been long since settled by the local law. In Amory v. Fairbanks, 3 Mass. 562, the supreme court of this state affirmed the right; and this court afterwards, in Hatch v. White [Case No. 6,209], recognised the same doctrine. It is too late now to controvert it. Judgment for the plaintiff.

## Case No. 10,509.

### In re O'MARA.

[4 Biss. 506.] [1]

District Court, N. D. Illinois. Oct., 1868.

ARREST OF BANKRUPT UNDER PROCESS FROM STATE COURT.

Where a bankrupt is under arrest under process from a state court, he should make application to that court, before coming into the court of bankruptcy to obtain his release. This practice is less likely to produce conflict of jurisdiction.

In bankruptcy. Motion to discharge the bankrupt [Michael O'Mara] from arrest on ca. sa. issued from the circuit court of Cook county.

DRUMMOND, District Judge. I do not at present feel inclined to make an order in the case. I wish, in all cases, to avoid a conflict of jurisdiction. Where a man is arrested under the authority of a state court, the application should in the first instance be made in the state court for his discharge, not only on grounds that the state law will warrant, but on the ground that the bankrupt law authorizes his discharge. It is not necessary that the party should apply here. I suppose that the bankrupt law applies to all courts. I do not like to have any conflict of jurisdiction. I was obliged in one instance, where an application was made to a state court and refused, to grant an order; but that was done by consent when the court intimated an opinion upon the subject. In re Wiggers [Case No. 17,623].

The question is suspended, so that the counsel may renew upon notice.

OMEARA (UNITED STATES v.). See Case No. 15,919.

OMEGA, The (The CAMBRIDGE v.). See Case No. 2,336.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

## Case No. 10,510.

### The OMER.

[2 Hughes (1877) 96.] [1]

District Court, E. D. Virginia.

MARITIME LIENS—MATERIAL-MEN—PRIORITY.

An order is taken by material-men, on a consignee, for the freights which a vessel is to earn on a voyage. The order is given to satisfy them for a balance due. The vessel was disabled at sea from pursuing her voyage, put into Norfolk, and there other material-men refitted her. *Held,* that the order for freights to be earned only suspended the lien of the first material-men, which is good for the balance due them, but that the lien of the second material-men, who contributed "most immediately" to the completion of the voyage, must first be paid.

[Cited in The Frank G. Fowler, 8 Fed. 333; The Rapid Transit, 11 Fed. 335.]

In admiralty. The vessel is libelled by Staples. Peed & Co., of Norfolk, for supplies, etc., disbursed to her to the amount of $4,012.80, to enable her to complete her voyage from Baltimore to Demerara, after putting in at Norfolk. The house of Loud, Claridge & Co., of Baltimore, come in by petition, claiming to be paid $1,128.09; the balance of an account due them for disbursements in Baltimore, in part for fitting her out for said voyage. Both the libellants and the petitioners claim as material-men; the petitioners for disbursements in Baltimore, the libellants for disbursements in Norfolk, in fitting out the vessel for the same voyage; the latter after she had put in in distress. The Omer sailed in ballast from Baltimore to Norfolk, where she received from Peters & Reed a cargo for Demerara. In the charter-party executed here, an order was given by the master on the consignees to pay the freight which was to be earned to the order of Loud, Claridge & Co., who took this assignment of freight, as they now allege, as collateral security for their disbursements in Baltimore on which the $1,128.09 was due. After taking on her cargo here, the brig set sail for her destination. But she encountered bad weather when several days out from the Virginia capes, fell into distress, and was obliged to put back into Norfolk. She here was obliged to discharge her cargo, and the libellants, Staples, Peed & Co., were employed by her master, with knowledge of her owners and of Loud, Claridge & Co., to repair and refit and supply her for the renewal and completion of her voyage. The libellants took possession of her for that purpose, which they held until the libel was brought. The cost of the repairs and disbursements made by Staples, Peed & Co., under the eye and approval of the master, was $4,012.80, and is conceded to be just. It was found necessary to resort to a bottomry loan to meet these expenses, and advertisement was made in the Norfolk newspapers for this loan, which was to be upon the faith of the

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]